**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**


**MICHAEL SMITH**                                    **CIVIL ACTION**

**VERSUS**                                               **NO: 10-889 c/w 11-1224**

**FLORIDA MARINE**                              **SECTION: "S" (2)**
**TRANSPORTERS, INC.**


### ORDER AND REASONS

    **IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment on Maintenance and Cure (Doc. #19) is **DENIED**.

    **IT IS FURTHER ORDERED** that Florida Marine Transporters, Inc.'s Motion for Partial Summary Judgment on Maintenance and Cure and Punitive Damages (Doc. #20) is **DENIED**, as to Smith's claim for maintenance and cure, and **GRANTED**, as to Smith's claim for punitive damages.  Smith's claim for punitive damages against Florida Marine is **DISMISSED WITH PREJUDICE.**

### BACKGROUND

    On May 13, 2009, plaintiff, Michael Smith, was working as a relief captain aboard the M/V GRACE NICOLE, a vessel owned and operated by defendant, Florida Marine Transporters, Inc. Smith alleges that he injured his right knee during a crew change while transferring from the M/V GRACE NICOLE to a skiff for transportation to the shore.  Smith reported the incident to Florida

Marine, and Florida Marine performed an investigation.  PBC Management, Inc., Smith's employer, immediately began paying maintence and cure.

On July 23, 2009, Dr. Douglas Brown performed arthroscopic surgery on Smith to repair a torn meniscus in Smith's right knee.  On September 1, 2009, Dr. Brown opined that Smith needed a total knee replacement.  On October 14, 2009, Dr. Christopher Cenac performed an independent medical examination on Smith, and opined that the need for the total right knee replacement was the result of a long-standing and degenerative condition, not acute trauma. PBC Management ceased Smith's maintenance and cure payments November 9, 2009, based on Dr. Cenac's opinion that Smith's need for a total right knee replacement was not related to the May 13, 2009, accident.

Dr. Brown performed the total knee replacement on Smith's right knee on February 4, 2010, and a revision thereof on August 4, 2010.  At his deposition on April 5, 2011, Dr. Brown testified that Smith's need for a total right knee replacement was caused by trauma.

Smith filed this suit against Florida Marine alleging that he was a borrowed servant of Florida Marine because the crew of the M/V GRACE NICOLE was under the direction and control of Florida Marine.  Smith also filed a related action against PBC Management seeking damages for the May 13, 2009, accident.

## ANALYSIS

### A.    Summary Judgment Standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir.

1991); FED. R. CIV. PROC. 56(c).  If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.  Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).  The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case.  Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

## B.    Maintenance and Cure

A seaman who is injured in the services of a vessel is entitled to maintenance and cure. Boudreaux v. United States, 280 F.3d 461, 468 (5th Cir. 2002). To recover maintenance and cure, the plaintiff must prove (a) his employment as a seaman, (b) that is illness or injury occurred, was aggravated or manifested itself while in the ship's service, (c) the wages to which he may be entitled, and (d) the expenditures or liability incurred by him for medicines, nursing care, board and lodging. MARTIN NORRIS, 2 THE LAW OF SEAMAN § 26.21 at 53 (Supp. 1992).

A seaman may bring an action for maintenance and cure against his employer *in personam* or against the vessel *in rem*.  See Baker v. Raymond Int'l, Inc., 656 F.2d 173, 185 (5th Cir. 1981). The employer is personally liable because the obligation to pay maintenance and cure "arises out of the contract of employment."  Baker v. Raymond Int'l, Inc., 656 F.2d 173, 185 (5th Cir. 1981) (quotations omitted).  In addition, a seaman may sue the vessel *in rem*, but not the vessel owner *in*

*personam*, to recover maintenance and cure due to "the peculiar relationship existing between the seaman and his vessel." Id. (citations omitted).  "Neither policy nor precedent permits a seaman to sue a nonemploying owner *in personam* for maintenance [and] cure ." Id.

**1.    Borrowed Servant Status**

Smith brought suit against Florida Marine *in personam* alleging that it was his employer. He did not sue the M/V GRACE NICOLE *in rem*.   PBC Management issued Smith's maintenance and cure checks, and PBC Management is listed as Smith's employer on his Louisiana Workforce Commission Separation Notice (Form LWC 77).   However, Smith's pre-employment medical examinations were addressed to Florida Marine, who owned and operated the vessel.  Also, Florida Marine and PBC Management share the same address and phone number.

"An injured worker may show that he was a borrowed servant at the time of his injury by establishing that the employer against whom recovery is sought had the power to control and direct the (servant) in the performance of (his) work." Id. at 178 (quotations and citations omitted).  The borrowed servant doctrine "places the risk of a worker's injury on his actual rather than his nominal employer" by permitting him to recover from the company that actually directed his work. Id. (citations omitted).  In Ruiz v. Shell Oil Co., 413 F.2d 310, 312-13 (5th Cir.1969), the United States Court of Appeals for the Fifth Circuit outlined nine factors to be used to determine whether the borrowed employee doctrine applies. These factors include the following considerations:

(1)    Who has control over the employee and the work he is performing, beyond mere suggestion of details of cooperation?

(2)    Whose work is being performed?

(3)     Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?

(4)     Did the employee acquiesce in the new work situation?

(5)     Did the original employer terminate his relationship with the employee?

(6)     Who furnished the tools and the place of performance?

(7)     Was the new employment over a considerable length of time?

(8)     Who had the right to discharge the employee?

(9)     Who had the obligation to pay the employee?

See also Melancon v. Amoco Prod. Co., 834 F.2d 1238, 1244 (5th Cir. 1988).

## 2.     Single Business Enterprise

Corporations generally function as distinct legal entities that are separate from the individuals that own then, and shareholders are not liable for the corporation's debts. Hollowell v. Orleans Regional Hosp. LLC, 217 F.3d 379, 385 (5 th Cir. 2000).  However, when two or more corporations constitute a single business enterprise, the court can "disregard the concept of corporate separateness and extend liability to each of the affiliated corporations for the purpose of preventing fraud or achieving equity."  In re Ark-La-Tex Timber Co., Inc., 482 F.3d 319, 335 (5th Cir. 2007) (quotation omitted).  A single business enterprise among corporations "occurs when a corporation is found to be the 'alter ego, agent, tool or instrumentality of another corporation." Dishon v. Ponthie, 918 So. 2d 1132, 1135 (La. Ct. App. 2005).

Neither Smith nor Florida Marine has presented any evidence upon which the court can evaluate whether the Florida Marine is liable for Smith's maintenance and cure pursuant to the

5

borrowed servant doctrine or the single business enterprise doctrine.  Therefore, Florida Marine is

not entitled to summary judgment based on the theory that it was not Smith's employer.  Further,

Smith is not entitled to summary judgment that Florida Marine is liable for maintenance and cure

because it is not clear whether Florida Marine can be considered his employer, and there are genuine

issues of material fact regarding the accident and whether his injuries were related to it.

**C.     Punitive Damages**

When an employer receives a claim for maintenance and cure, it is entitled to investigate and

require corroboration of the claim before making payments. MNM Boats, Inc., v. Johnson, 248 F.3d

1139 (5th Cir. 2001) (citing Morales v. Garijak, Inc., 829 F.2d 1355, 1358 (5th Cir. 1995), abrogated

on other grounds, Guevara, 59 F.3d 1496).  If the employer, after conducting the investigation,

unreasonably refuses to pay maintenance and cure, it is liable for maintenance and cure and also

compensatory damages. Id.  Further, if the employer has shown callousness and indifference  to, or

willful and wanton disregard for, the seaman's injuries, it is liable for punitive damages and

attorneys' fees. Id.; see also Atl. Sounding, 129 S.Ct. at 2575.

PBC Management, a company related to Florida Marine that was Smith's nominal employer,

began paying maintenance and cure to Smith immediately after the May 13, 2009, accident.  PBC

Management ceased Smith's maintenance and cure payments after Dr. Cenac opined Smith's need

for the total right knee replacement was the result of a long-standing and degenerative condition, not

acute trauma.  Although, Smith's physician, Dr. Brown, disagrees with Dr. Cenac's assessment, an

employer is entitled to perform an investigation, and does not act arbitrarily and capriciously by

relying on one medical opinion over another.  Therefore, Florida Marine's motion for summary

judgment is GRANTED as to Smith's claim for punitive damages, and those claims are DISMISSED WITH PREJUDICE.

## CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment on Maintenance and Cure (Doc. #19) is **DENIED**.

**IT IS FURTHER ORDERED** that Florida Marine Transporters, Inc.'s Motion for Partial Summary Judgment on Maintenance and Cure and Punitive Damages (Doc. #20) is **DENIED**, as to Smith's claim for maintenance and cure, and **GRANTED**, as to Smith's claim for punitive damages.  Smith's claim for punitive damages against Florida Marine is **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, this  <u>29th</u>  day of June, 2011.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**

7